We'll hear argument next in Case 13-719, Dart-Cherokee Basin Operating Company v. Owens. Mr. Barrett. Mr. Chief Justice, and may it please the Court. In Section 1446a, Congress established a pleading standard for the notice of removal, not a demand for proof. The plain language of Section 1446a tells us this. The plain language of Section 1446a provides that a notice of removal shall contain a short and plain statement of the grounds for removal. And that mirrors language that has been used in Rule 8 for more than 80 years and that has never been held to require evidence of a complaint. Scalia, how do we know that the reason the court of appeals did not or sustained the refusal to take it, how do we know that the reason was that they disagree with you on what the standard? We don't know what the court of appeals' reason was. How can we? Well, we know that the court of appeals let stand a district court decision. Right. And so your job is to argue that that was an abuse of discretion, because the statute says that they may, right? Well, an abuse of discretion is not necessary to be shown here. It can be shown here, because what the circuit court did here was let stand a decision that did many things, and it's an unusual situation in the law, Justice Scalia. It let stand a decision of the district court that flouted the plain language of the statute. Is it always an abuse of discretion for the court of appeals to let an erroneous decision stand? Not necessarily always. In a case like this, however, when the decision that was let to stand flouted the plain language of the statute, is a situation where if it's not corrected by this Court, it may never be corrected, and what the problem that will never be corrected is this lack of uniformity among the circuits on a matter that's so clearly established by Congress. Congress does not require there to be evidence in a notice of removal, and defendants in Florida or defendants in California don't have to include evidence within 30 days in their notice of removal. Defendants in the six States at issue in this case do. They are treated differently. Kagan. That seems a little extreme to say it may never be corrected. I mean, this was a decision that was made by eight judges. There are now 12 judges. Maybe the additional four will make a difference. Maybe even the those eight will think twice about it the next time around. I mean, in fact, we just don't know, right, because we don't know why they acted the way they acted. It might have been because they thought that the district court's decision was right, or it might have been because they thought that that question is better, was better decided in some other context, or it might be because they were just feeling too busy that day. And an abuse of discretion standard would go, you know, to the just the decision whether to take it, not knowing what that decision was based on. Well, Justice Kagan, in this situation, given what the Tenth Circuit has done, and as Judge Hart's pointed out in his dissent below, it's highly unlikely that a situation like this would arise again. It takes an unusual confluence of circumstances to have a case get here in the first place. But now that we are here, lawyers in the Tenth Circuit are more unlikely than ever to allow this problem to happen in the future, to allow this to recur. And so that is a main part of why this is an unusual situation. It's not a garden-variety decision by the court of appeals that we are facing. Roberts, I'm not sure you're joining issue with the question Justice Kagan asked. Do we really not know why the Tenth Circuit did what it did in this case? Well, the Tenth Circuit did not explain the reasons for its decision. But the dissenters in the case thought to explain why they thought it was wrong. Don't you think if the Tenth Circuit relied on a different reason, they would have said so? Well, they may have, they may not have. They are not required to, but they are not allowed to insulate their decisions from review simply by not explaining them, especially in a situation like this, involving the unusual situation and involving a circuit that is wayward, a circuit that is not applying the plain language of section 1446A. I mean, I'm not sure what the case. Has there been any suggestion at any point in this case in the district court, in the court of appeals, in the papers that have been filed here, that the decision was based on anything other than the reasoning of the district court? Any other reason been given? There has not been another reason that's been given. And the reason that the district court gave was clearly erroneous. The district court clearly thought that she was constrained to ignore evidence, that all parties agree is sufficient to establish removal jurisdiction in this case. This is a case where there's no dispute about whether all of the elements necessary for Federal court jurisdiction exist. The only impediment to Federal jurisdiction right now is that the district court felt constrained to ignore that evidence solely because of a timing restriction that is not found in the plain language of the statute. And when the district court gave the decision, the district court said, no, I'm not going to do that. Could attorneys who want to remove within the 30-day period seek mandate from the Tenth Circuit to mandate the judge not to require the evidence? Well, they could, I suppose they could try something like that. I think that they're not required to. Congress has told us that they're not required to go to such extreme measures. Congress has told us that what defendants are supposed to do is, within 30 days of receiving the complaint or in other paper, either of which would put them on notice that there's the amount of controversy in play here, that they are required to file their notice of removal. And in the Tenth Circuit, they have to go get affidavits. Perhaps the CEO of the company is in Hawaii or something. And frequently, lawyers aren't even hired for a couple of weeks after a complaint is filed. And so you can have a situation where in the Tenth Circuit, unlike in other circuits, maybe there's only 10 days to go find the CEO to get the affidavit that is thought to be necessary, when that requirement simply does not exist in the plain language of the statute, and it doesn't exist, it's not enforced in any of the other circuits. Mr. Barrett, I apologize for going back to this not-merits question, but on the question of why the Tenth Circuit did what it did, Judge Hartz, who was, of course, dissenting from denial, you know, made reference to the fact, and I'm just quoting here, that the judges were very busy, and the appeal presented a knotty matter that requires a decision in short order. So even he, who was trying to suggest that an appeal should have been taken, was not suggesting that the Court did what it did because the Court agreed with the trial court. Well, in a case like this where all parties agree that there's a case in the court of appeals, so there's jurisdiction under Section 1254, the Forsyth v. Hammond case confirms that this Court has the power, the certiorari power, to look to the whole case, to look to any aspect of the case. Ginsburg. But I thought Hahn, which I think he used as explaining why the case is in the court of appeals, but Hahn said the only thing that you can review is the COA, the Certificate of Appealability. You can't use that handle to get to the merits. So the only question is whether the certificate was improperly denied and not the merits. Well, Justice Ginsburg, the difference in that case was that the government conceded error. Government conceded that the merits question was not in dispute.  This Court has reached the merits in a similar situation in the Nixon v. Fitzgerald case. But I thought, are you saying that all parties concede that this case is in the court of appeals, both with respect to the proper exercise of the court's jurisdiction in taking the case and as to the merits? That's right. Once the case is in the court of appeals under Section 1254, Forsyth confirms that this Court has the power to review any aspect of the decision below. Kennedy, I think that's contrary to Hohn, as Justice Ginsburg has just indicated. Well, Hohn did not purport to overrule Nixon v. Fitzgerald. I know one's a COA and the other is this statute. There's maybe a difference there, but I don't see the difference. Justice Kennedy, this case presents different issues than were in play in Hohn. And a case that presented issues very similar to this is Nixon v. Fitzgerald. And in that case, the Court did both steps. The Court took both steps. The Court, number one, confirmed that it had jurisdiction under Section 1254, which exists here. All parties agree. And number two, the Court in Nixon v. Fitzgerald went ahead and addressed the merits question, which is what we asked the Court to do in this case, because if the Court doesn't go ahead and address the merits question in this case, there's a high likelihood that the merits question won't be addressed, and that we'll have one circuit alone that has this requirement out there that flouts congressional intent. The reason is that any careful lawyer in the Tenth Circuit will know that we'd better put the evidence in, in the notice of removal. So a lawyer is not going to risk failing to do that, to make the 10th Circuit's error. That's right. And this sort of belt and suspenders approach is not what Congress tells us defendants have to do. Defendants just don't. The district court's opinion is not, certainly not, circuit law. So I think you exaggerate when you say it establishes bad law for the circuit. It just doesn't. The circuit let the district court decision stand, but that doesn't make the district court decision circuit law. The district court was relying on circuit law in making its decisions. Sure, and maybe it was wrong. Well, the circuit law, which started this, the Laughlin case from 1995, is wrong, we would submit. And that is the case that got the Tenth Circuit off on this track. I see, you're not relying on this case, you're relying on the fact that the district court relied on an earlier case. That's right. This so-called Tenth Circuit rule, which came into effect in about 1995, is what set this circuit off, it's off track. And this is the case that can bring this circuit back on track, and to, to not require the district courts to feel constrained, as the district court here felt. The district court here felt that she was constrained by Laughlin and by a couple of other cases in the Tenth Circuit that established this Tenth Circuit rule. And based on that constraint, which again finds no basis in the text of the statute, she refused to consider evidence that all parties agree establishes the amount in controversy. The amount in controversy in this case, as established, is more than four times the amount in controversy. Sotomayor, how would you answer this question? How did the circuit abuse its discretion? The circuit abused its discretion by letting stand a decision that so plainly violated the plain language of the statute, that exists in a case in which further review is highly unlikely, so that if it's not corrected now, it may never be corrected. And in doing so, it, it, it ran counter to this Court's desire for uniformity among the circuits in the law, especially in uniformity in a matter this important and this, and in which Congress has spoken as clearly as it has. Breyer, you think that the circuit abused its discretion by relying upon an improper legal reason. We do believe that. It's classical. It's Volpe. We, we do. We don't believe it. Now, it isn't quite clear that they did, because they didn't say. But you think there's a good chance they did. So then I guess that you would like us to say, if that was your reason, it's improper and wrong. Now, we'll send it back to see if there is some other reason. That's your position. That's right. And this Court reviews. There's nothing more to it than that. This Court reviews judgments, not rulings. And that's a different point. And what we review is the word denied. And, and the question of the word denied is we're not certain why, but we have a good suspicion. Is that, I mean, that's the argument. Is there anything else to it? What else is, is in the argument is that this Court is not required to find an abuse of discretion to, to rule in our favor in this case, because this Court's certiorari power is broad enough so that this Court doesn't even have to wait for a circuit court to act. So if this Court doesn't have to wait for a circuit court to act, it shouldn't be restricted from doing what is right, but merely by a circuit court's decision not to explain its reasoning. Sotomayor, in other words, you win either way. We say they abused their discretion if they relied on the wrong law, or we go right to the law because we have that power to do it. That's right, Justice Sotomayor. We ask you to review the Tenth Circuit's decision. There's choices the Court could make in how to handle this. We think the most logical way for the Court to handle it is to, to review the Tenth Circuit decision, and in doing so, to look through that to what the Tenth Circuit did. And when you do that, you find this clear error of law, this failure to appreciate Congress's plain language, this failure to appreciate the fact that this is not a case that's likely to come up for review in the future. We don't know what the Tenth Circuit did. You see, the Tenth Circuit's decision, the Tenth Circuit made no decision. It declined to take the case, didn't it? It may, the statute says it may, and it said we won't. And we don't know why they said, said that. Even the dissenters in the petition for in-bank didn't say, oh, the Court was wrong to stand by our earlier decision, which you, which you complain about. No, they said, you know, this was an important issue and we should have taken it. Now, you're saying we're going to review that decision as an abuse of discretion, that you should have taken it, right? I am saying that once the application for an appeal was filed, there's a case in the court of appeals, therefore, this Court's power is so extensive, it can review any aspect of the decision. It's not hampered by a lack of an explanation for the decision by the Tenth Circuit. Scalia, is that right? I mean, it seems to me the statute gives power to the court of appeals. It says the court of appeals may decline to take it. We can't override their judgment not to take it unless there's something unlawful about that judgment. You give us too much credit, you know. We don't have total power to make decisions that courts of appeals are supposed to make. Justice Scalia, under Forsyth, though, this Court does have the power to not be constrained by the district court's law. I thought your answer would be, of course, he's right. But there is something unlawful about this decision. Suppose the decision had rested on his religion. It would not have been unlawful, wouldn't it have been? Suppose they didn't tell us, but the dissent told us. So the question is you're arguing, yes, there was something unlawful. The unusual thing about the case is the person who tells us what they were doing is the dissent. Now, I don't know why the dissent says that was a reason, as I read the dissent. Maybe other people read it differently, but as I read the dissent, the dissenter was telling us that that was a significant factor in their decision. Now, has it found any other case where we find out what they did by reading the dissent? It doesn't sound to me totally unusual. Well, I don't think so. Scalia, do you agree with that description of the dissent? Do you think the dissent said that that was the reason? The dissent said that the district court felt constrained by this preexisting Tenth Circuit precedent to refuse to consider the evidence. Yeah, but the dissent didn't say why the court of appeals refused to take the case, did it? It didn't say the court of appeals refused to take it because it agreed with that prior decision. It didn't say that, did it? It did not explain that. That's all. Do you see where it's at? Breyer, you have different judges who possibly read different language in the dissent to suggest what the dissent is thinking. So he doesn't say it literally, but when I read it, I thought that's what he means. But based on what happened here, there is just simply no way that the Tenth Circuit's decision can satisfy an abuse of discretion standard. Let me give you an example of something that happens quite frequently, and maybe you can tell me if this situation is any different from that. A district court has to make a decision on something as to which the district court has discretion. A party urges the district court to make a particular decision based on one ground, and the one ground is based on a legal error. The district court rules in favor of that party, but says absolutely nothing. Now the issue is raised on appeal. The argument is that the trial judge abused his or her discretion. Now, would that be insulated from review for abuse of discretion on the ground that, well, we really don't know why the judge did what the judge did? The judge didn't say anything. So the judge might not have based the decision on this one, on this legal error, the only ground that was urged upon the court. It might have been based on something else. What would be the difference? Is that different from this situation? It's not very different from this situation. A classic abuse of discretion is an error of law. And there was an error of law here because the district court felt constrained. Kagan, Mr. Barrett, that assumes that when an appeals court decides whether to take an appeal, all they're doing is making a merits determination. And if that's all that appeals courts were doing when they decide whether to take an appeal, then you would be right. But in fact, we know from everything we do every day that when a court decides to take something or not to take something, they're not just making a merits evaluation, they're doing a thousand other things as well about how they think it's best to arrange their docket. And what we don't know is whether the Tenth Circuit here did one of those things. I believe that what we do know, what we can glean from this, though, is that by failing to correct this clear error of law, that was an abuse of discretion. I don't believe an abuse of discretion is necessary here because this Court isn't constrained under the Forsyth case by what the district – by what the circuit court did, because this Court can act before the circuit court acts. But an abuse of discretion is shown here. We can show an abuse of discretion. It's the classic abuse of discretion of a clear error of law. But there isn't a floodgates problem here, I think, with respect to every time a district court, a circuit court commits a clear error of law, that it has to be repealable. Scalia. I guess it's an abuse of discretion whenever we fail to correct a clear error of law on a petition for certiorari, right? And I'm not going to mention any names, but is that the case? It's an abuse of discretion? I thought we just had the power to say we don't feel like taking it. I don't believe it would be an abuse of discretion for this Court. This Court's power is different than the circuit courts. The circuit courts do not have the benefit of the broad, nearly unlimited power of Forsyth. Kagan. But this statute gives the appellate courts tremendous discretion on this area. It says it may take an appeal, it may not take an appeal. Think of the thousand things that you want to think about, not anything invidious, not anything impermissible, but, you know, whether to take an appeal. And that's what the only thing we know about. Here's a question for you. Because I sympathize with you, because the next half hour is going to reveal that actually most of us agree with you on the merits, right? So, I will limit it. I agree with you on the merits, all right? But I just don't see how to get around this. Here's my suggestion. Would it be sufficient? For your purposes, you're worried about the sort of continuing effect of this, to just sort of get rid of this case, dismiss this case, but to we often explain why we dismiss cases and to suggest that we're dismissing it because we don't know whether the Tenth Circuit made a decision on the merits, and if and to the extent that the Tenth Circuit wants in the next case to make a decision on the merits when it denies an appeal, it should say so, so as not to insulate that decision from review. That seems like a fair thing to say to the Tenth Circuit, don't insulate your merits decisions from review, but it also seems to be, you know, to reflect what is true about this case, which is that we don't know whether it made a merits decision. Well, this Court doesn't need to know whether the circuit court made a merits decision to reverse in this case. This Court's discretionary power, this Court's certiorari power, once there's a case in the court of appeals, doesn't require this Court to know why the circuit court did what it did. Roberts. Do you think it's appropriate for this Court to dismiss certiorari, in other words, the case is not before us, and then opine on the merits of the case? No, no, no. I was not suggesting that we opine on the merits of the case. I think that that would be not appropriate. I thought the suggestion was that we tell the Tenth Circuit that this was wrong. No, no, no, not my suggestion. It might be your suggestion. Well, if we simply dismiss certiorari, what do you think we have the authority to say other than the reasons for dismissing certiorari? Well, I think, number one, I think you have the power to rule in favor of my client in this case. I think you have the power, perhaps, to remand the case to the Tenth Circuit, this case, and require the Tenth Circuit to consider the appropriate factors. I don't think it would be appropriate, given where we are, given how far we've come, given the fact that all parties agree there's a case in the court of appeals, given that Forsyth teaches us that this Court need not know why the circuit court did what it did to find an abuse of discretion, if an abuse of discretion is necessary, I would submit that a minimum that this Court would remand the case to the Tenth Circuit for appropriate balancing of the factors. But I don't believe that that is necessary, because I believe that because of Forsyth and because of this Court's power, this Court has the power to reverse this case, similar to what happened in the standard fire case. Roberts, how can we remand for an appropriate consideration of the factors if we don't say that what took place was inappropriate? That's a decision on the merits would cover all those bases, Mr. Chief Justice. A decision on the merits here would correct the error. It would correct the error in this case, and it would correct any – keep any errors from happening in future cases. Kennedy is the only way we can do that, by granting cert before judgment? I don't believe that that's the only way that that can be done. I think that it happened in – in – Well, let's assume that we think the case that Hohn controls in this case is in the court of appeals only for the purpose of determining whether the appeal should be taken. If we make that assumption, then isn't the only way for us to reach the merits to grant cert before judgment? Justice Kennedy, the Court's certiorari power is broader than that, I believe. So I don't believe that a cert grant before judgment is the only way, because this Court does not need to wait for the circuit courts to act. But if this Court does wait for the circuit courts to act to act, then it's not a way to do it. Well, do you grant cert on the ground that it's interesting? I mean, I don't quite – I don't know what your standard is. You grant cert on cases of national importance, on cases in which there's one wayward circuit that's so flouting the plain language of the – of the statute that it – that it needs to be corrected, that defendants in the heartland of the country, in these six States, should have the same benefits as defendants in those other States. In other words, we grant cert to the district court. This Court can grant cert to the district court. It's very rare. I mean, that's the only way we can do it, it seems to me. Kennedy, if you assume that the case is in the court of appeals only for the purpose of determining whether to take an appeal. Well, the Nixon v. Fitzgerald case, though, confirms that the Court is not so constrained. Well, but we'd sort of frustrate the statute, wouldn't we? The statute gives the court of appeals the discretion to decide whether there will be an appeal or not. And you're saying, oh, no, if they decide there won't be, you just reach in and you have cert before judgment. I think that's a real frustration of the purpose of the statute, which says these matters, you know, are not all that significant. So it doesn't come to Federal court. It stays in State court. Who cares? We trust our State courts. I mean, the whole purpose of the statute is to make this, you know, a quick and dirty judgment. That's why they don't have the State reasons. They just say no appeal or appeal. And you're saying, oh, no, it suddenly becomes laden with all sorts of requirements that if they're not observed, we grant cert before judgment. I wouldn't think of doing that with this statute anyway. Well, when Congress provides in 1453 for appellate jurisdiction over these remand orders, Congress is providing for jurisdiction in this Court because Congress didn't legislate to the contrary. When Congress wants to prevent this Court from having the ability to take up a writ of certiorari, it does so as it did in the EDPA context, when it explicitly restricted this Court from hearing a petition for a writ of certiorari or granting one. Congress didn't so legislate here. This Court has full power to address both the merits question in this case. I would like to reserve the balance of my time. Thank you, counsel. Mr. Sharpe. Mr. Chief Justice, and may it please the Court, the remand order should stand for at least two reasons. First, 1447d bars this Court's jurisdiction to review this case at all on appeal or otherwise, because the Tenth Circuit did not accept the remand appeal under 1453. Consequently, this Court has no jurisdiction at all to review this matter on appeal or certiorari or any other way. So if the court of appeals said, we are not accepting this petition because of the race of the person seeking removal, that's just too bad, we can't review that? If they give a reason, I think this Court can review a reason. But if it doesn't give a reason, it just simply does, as this Court sometimes does with a petition for certiorari denied, there's nothing to review. So if every case in which parties seek removal, a particular race of person seeking removal, their case is denied, a hundred out of a hundred cases, we still don't have any basis, and they know, gosh, the one thing we can't do is say why we're doing it. They have a blank check, they can do that forever without any review by this Court? No, I don't think you have a blank check, because at the time, it goes back to State court, thing comes up on final judgment, and this Court would review that final judgment on whether the remand was proper. But it was just pointed out that lawyers in the Tenth Circuit are not going to take that risk. The Tenth Circuit precedent, which the district court followed, says you must produce in the notice of appeal evidence. So what lawyer is going to say to his client, now, we can easily do that, but I won't because I want to test whether the Tenth Circuit precedent is wrong. As a practical matter, this will be unreviewable because the lawyers will simply conform to what the Tenth Circuit says is the law. Your Honor, I think that's what the dissent pointed out, is that what lawyer would not put on evidence after having that Tenth Circuit rule set forth as it has been for the last 20 years? But yet we do have this case where evidence wasn't presented. Why the evidence was not presented, no one knows. It was clear that DART had the evidence to present at the time of its notice of removal, but didn't present it. Perhaps it wanted to challenge this issue to the Tenth Circuit. Ginsburg. Maybe because it thought there wouldn't be any controversy. Maybe they thought, the defendant thought the plaintiff would agree that the amount was over the jurisdictional limit. That's a good point, Your Honor, and that's entirely possible. That, as it turns out, would not be this case, because as we get deeper into the evidence in this particular case, this one doesn't meet $5 million. It's not going to get close to meeting $5 million. Breyer. You started out by saying 1447d, which I thought had nothing to do with this case. That is, I thought that they were going there, the relevant statute is 1453c1, which says a court of appeals may accept an appeal, notwithstanding section 1447d, from an order of a district court granting or denying a motion to remand. All right? So we're not talking about 1447d. We're talking about 1453c1. Now, what they did is they said they have an order, and the order says, no, we won't accept it. And the question is, is that order reviewed in this Court? I didn't think there was disagreement that it is reviewable. If they had said, we will not accept it because we think that it only applies to stoppage-in-transit two cases, there would have been reason. Their reason would have been wrong, and I guess we could review it. Is that right or not? Yes or no? No, Your Honor. No. We can't review any case when they turn it down, no matter what their reason. Do you have any authority for that proposition? 1450, as you pointed out, 1453c and 1453 in total adopts the entirety of 1446 and 1447 with limited exception. No, it doesn't adopt it. It says, notwithstanding section 1447d, a court of appeals may accept an appeal. So please accept my appeal. The court of appeals says no. My question to you is, does this Court have authority to review the order that says no? And my answer is, no, it doesn't, no matter how terrible the reason, it doesn't. Is that your answer? No, my answer is because they did not accept the appeal, then you go back to 1447d. No, no, I'm saying, my hypothetical is they do not accept the appeal. They say we do not accept the appeal because 1453 only applies to stoppage in transit, okay, a totally wrong reason. Now, are you saying we do not have the jurisdictional authority to review that order which says deny? Denied for some clearly improper reason. Yes, denied for some clearly improper reason. Are you saying that? And if so, I'd like to know the authority for that, because we have plenty of cases that go with the analogous certificate of appeal in habeas capus, cases where we take it. I understand, Your Honor, and I don't think I have any cases. All right. If you don't have any cases, we might file the other one. If you agree and you don't, well, all right, I don't know where to go from here. Because if you're going to say we can't take authority where they absolutely can't hear the case where it's absolutely clear they're wrong, then I don't know where to go. Well, let me see if I can agree with that. But, I mean, you know, I'm not going to get you to say anything more. Let me see if I can address it, Your Honor. Hahn and Miller L. are not remand cases, and Nixon was not a remand case. 1447d expressly deals with remand cases, and section 1453c1 says when there is an accepted appeal under 1453, then 1447d, it doesn't apply. But all the rest of 1447d applies, and all of 1447 applies, if the appeal is not accepted. That puts you right back into the 1440cd realm, and 1447d says this Court doesn't have any jurisdiction under Gravitt. This is a similar case to, like, Kircher v. Putnam Funds, where this Court basically said the district court got it wrong, but we don't have jurisdiction to hear it. Do you think it's constitutional for Congress to say that certain minor issues, or what it regards as minor issues, shall not be appealable for any reason, whatever? So that even if it's decided you're going to do it for a plainly improper reason, like religion or race or something, still and all, it ain't worth our trouble, right? Can Congress do that? Your Honor, I don't think Congress can. No, I don't think Congress can. You don't think Congress did that here? I don't think they did that here. I think they made a simple declaration in 1447d that remand orders are not worth the time of the court to handle on review, and with respect to class actions, we're going to let the court of appeals make that choice of whether it makes, if it merits any attention on appeal. Do we pay any attention at all to the obvious purpose of the Class Action Fairness Act, which was to get cases out of the State courts and into the Federal courts? Usually, we don't have that strong Federal policy of having the adjudication in the Federal court. Yes, Your Honor. CAFA, I think, made clear that certain larger cases, interstate-type cases, belong in Federal court. This isn't that kind of a case. But if it was, you also have to be careful. You said that you would argue that the amount in controversy was not satisfied. It seems to me that most plaintiffs who are bringing class actions are not going to be argued, oh, we can't prove $500,000. Your Honor, as much as my client would like to see this be a bigger case than it really is, this particular case, as the Court knows, when the original allegation was made on a conclusory basis of $8.2 million, that was made on the basis of all of the potential damages for all of the royalty owners. But in this oil and gas context, about 62 percent of all of the oil and gas leases were express deduction leases. In other words, they expressly authorized the deductions that we complained about. There goes about 40 percent of our damages right there as a matter of law. The second thing is that it turns out, as we get deeper into this case, that DART doesn't have all of the working interest in this particular oil and gas patch. They have more along the lines of half. There goes another half of our damages. Now we're down to 20 to 25 percent of the oil and gas damage. Ginsburg, you had alleged in your complaint that the damages that you were seeking were under $500,000, if that's what you thought. Then you would be the one. We had no idea at that time, Your Honor. We didn't know how much. We just didn't have any information whatsoever at that time. But when they did allege in the notice of removal that the amount in controversy was met, you didn't contest that. We didn't need to at that time. We already had taken on the issue long before any evidence was presented to us that they had not proffered any evidence with the notice of removal. Under the JCVs, the JVCA. But what you didn't say is that there is no such evidence, and that our damages are less than $500,000. We didn't know. We didn't have any evidence at all as to what the amount in controversy was. So we didn't allege it in our petition, and when that was removed without anything other than an allegation that it was worth $8.2 million, we couldn't do anything other than say, how do we know, where is your evidence? We have no evidence. Ginsburg. This State doesn't require the complaint to state the amount in controversy. But if you were bringing this case in the Federal court in the first instance, would you have said as plaintiff, the damages that we seek are under $500,000? $500,000? If I had been in the know at the time this case was filed, I would have alleged what the amount of damages were. I also may have alleged the case in a completely different way than I did. But I didn't have that evidence. So consequently, when the removal was made without any evidence at all from which we could determine what the amount in controversy really was, we said, let's remand this case, because you haven't come up with the actual evidence. They should have waited and presented all of the damage evidence and waited for another paper like most of the other defendants do, but they didn't. They wanted to jump the gun and get into Federal court, and they didn't come with their evidence like they were supposed to. The JVCA is not going to do that. Ginsburg. But there's only one circuit that, I mean, that is so antithetical with the whole plea evidence, plain statement doesn't include evidence, which is, it is quite an extreme interpretation and counter to the whole thrust of the Federal rules, that you make a plain statement and then the evidence comes later. Well, the way I read the JVCA in 1446a is that the grounds must be just plainly stated, just like a regular pleading. The grounds are diversity. The grounds are a Federal question. And then C-2 specifically addresses the amount in controversy. A does not say anything about the amount in controversy. C and C-2 addresses the amount in controversy. And C just says the amount in controversy. Sotomayor, I've never, I'm a little hard-pressed to understand why the district court would be without power to decide this question. They came in with evidence afterward. Why couldn't you have come in with evidence and the district court decide which one is right? Certainly, that could have been done if they had gotten over the procedural hurdle to begin with. The Tenth Circuit rule is pretty simple, and it also follows the JVCA, which basically says, if you want to jump the gun into Federal court and you're not going to wait on the plaintiff to virtually admit their way into Federal court, then you're going to have to put on some evidence in the Tenth Circuit. They require prima facie evidence. If plaintiff looks at that prima facie evidence and does nothing, under Wilson, you're in. There's nothing more that needs to be done. Kagan. Kagan. You say C-2, which is the preponderance standard, but that's just the standard that the Court is going to use to make the determination about whether to be in Federal court or not. But it seems to me that the statute is best read, is really only read to comport, as Justice Ginsburg said, with the rest of the Federal rules. It's no displeading. Then the original plaintiff has a choice. The original plaintiff can contest the removal and present evidence, and in that case, the defendant comes back with evidence, and the defendant bears the burden of proof, and the Court makes its decision on the basis of that two sets of evidence. But why one should think of the original notice as needing to contain evidence is just, I guess I don't understand where that comes from. Well, the reason for that, I think, is that the original notice is not a pleading. It is not like plaintiff originating the case in Federal court. It's not a pleading. It's actually a motion. And as with most motions, you generally have to submit your evidence, you have to prove a motion, and you usually have to submit your evidence with notice. Ginsburg But this is a provision for removal that tracks the language of Rule 8a. And so you're asking for, oh, even though it copies Rule 8a, which certainly doesn't require that you plead evidence, you do have to do it for a notice of removal. You have to for the notice of removal because C-2 does a couple of things. C-2 says if plaintiff alleges something less than the amount in controversy, that's golden and conclusive. It doesn't matter that defendant thinks it's different or that it's higher and would meet the Federal jurisdictional amount. It's done. But under C-2a, if there's a silent petition in the State court, defendant can jump the gun and say, you know what, I want to allege, I want to say how much I think is at issue, you can allege that under A. But that's not conclusive. There's nothing in C-2a that says what defendant says is conclusive. Ginsburg If the plaintiff wanted to challenge that, I could understand your position, and then you would have the respective parties putting in their evidence. But if the defendant makes an allegation, amount in controversy is met, and the plaintiff doesn't say no, doesn't say that we don't have the amount in controversy. McAllister Justice Ginsburg, in this case, as in most class actions, plaintiffs have no evidence that they could possibly put on. They couldn't dispute anything that the defendant actually said. But this particular issue as to when the evidence must be presented, the reason it's done with the notice of removal is so that the evidence is out there for the plaintiff. Ginsburg When you bring a class action, you're looking for big bucks, and the likelihood that it's going to be controverted, that the plaintiff who's brought a class action in the State court is going to say, oh, we can't, we can't make the amount in controversy. That sounds very strange to me. Most class action plaintiffs are not going to contest that their claim is worth at least $500,000. McAllister Well, in this particular case, this case really isn't worth $5 million. So there was nothing, no way, though, at that point for us to contest one way or another. If the plaintiff is going to make any kind of a contest, there has to be some presentation of evidence to begin with. There's not going to be anything other than a plaintiff saying, if the simple allegation is, well, it's worth more than $5 million. Ginsburg Well, I don't follow that, because ordinarily a plaintiff would state what the plaintiff's damages are. McAllister Plaintiff in a class action generally does not have the evidence of how many class members there are or how much they've been damaged. It's the defendant that deals with all of the class members on a class-wide or company-wide basis. The plaintiff generally does not have that information available. Defendant does, and it usually has to be determined through a discovery process, which usually occurs in State court, at which point the defendant sends a request for admissions or asks a case for deposition. Ginsburg And let's take a case in the Federal court, a class action case. Plaintiffs don't state what the amount in controversy is? McAllister If they know what the amount in controversy is, they could state what the amount of controversy is, but they generally do not. I certainly did not in this particular case. And in most class actions that get filed that I'm aware of, plaintiff doesn't know what their damages are before they file the suit. Ginsburg But you would say, all that the plaintiff would say is, we meet the amount in controversy. McAllister They could say the amount in controversy is 5 million or 7 million or whatever it may be. Whether that has any validity at all after this Court's ruling in Nulls v. Standard Fire, I don't know. It's clear that you can't allege something lower to try to stay under the limit. I don't know whether you can say something over. I'm not sure that you have the authority to bind the class until you're already a class representative, have already been appointed as class counsel. Nonetheless, these particular cases end up in which the defendant has the evidence, plaintiff does not, and this particular case and this particular statute shows that that evidence has to come in at the time of removal. If it doesn't come in at the time of removal, their suggestion is it comes in at the time of remand. If that were the case, you would find this evidentiary requirement in the text under 1447, where the remand rules are found, not in the removal of 1446. You wouldn't find it at all there. You'd find it. Kagan I'm sorry, I guess I don't get that. You said if it doesn't come in at the time of removal, it comes in at the time of remand. But there's an alternate position, which is the notice of removal is just the allegation. If the plaintiff wants to contest that, the plaintiff can contest that, and then the defendant has to come forward with something because the defendant has the burden of proof. Likewise, if the court thinks that the allegation is not appropriate, the court can sua sponte say, you know, you have to show me more because I'm not sure I have jurisdiction over this. But either way, it all happens in the Federal court after the notice of removal, which is merely an allegation, is filed. And that makes perfect sense. It means that most allegations will just be accepted as is. And the only ones that everybody will have to come forward with evidence are when there's some reason to contest it, when either the plaintiff or the court has some serious doubt about it. Well, plaintiff usually has absolutely no idea what the allegation may be. For instance, when they came forward and said the amount of damages is 8.2 million, we had no way to contest that with any evidence of any kind. Now, if all we had to do to contest it was say, we contest it, we don't think it's worth $8.2 million, prove it, every plaintiff would say, show me your hand. Breyer. Not necessarily. I mean, it's the same as a complaint. They allege, well, paragraph 1, paragraph 2, paragraph 3, and the defendant comes in and says admitted, denied, admitted, denied, not enough information. All right? So you do the same thing. What's the problem? It could be, if this, if 1446 was written such that 1446a was the end of it and there was no further part of the statute, then all they would have to do is make an allegation, and that would be the end of it, and under 1447, then you would see that. They have to allege facts. They have to say the allegation is, and so forth. And then you say denied. And that was part of the district court's opinion. There were two parts. One was that there wasn't any evidence. And the second part was that it was conclusory, that there were no facts. All you said was 8.2 million. And so both of those were possible. Breyer. Isn't that a fact? Is, excuse me, Your Honor? Isn't 8.2 million a fact? It's a conclusory fact. Oh, it's a fact. They say. In their view, all right, I don't know what a conclusory fact is as opposed to a regular fact. It seems like a lot of money to me, but I sort of. I would agree with Your Honor. And it sometimes is difficult, but I think we deal with those a lot now that Twombly has been adopted by this Court. Conclusory conclusions are not sufficient in terms of pleading for the plaintiff. And if this particular Court were going to find that evidence is not required, under 1446 we urge the Court to at least say go the distance and treat the 1446 allegation like a Twombly allegation, and conclusory would not be sufficient. That's what the district court found, both that you should have put on some evidence, you had it, you should have put it on, and secondly, that what you did say was conclusory. But let me draw back to the. Ginsburg. Where was that said about conclusory? I thought that the district court's position was, sorry, you're too late. I won't entertain anything about 8.2 million or whatever it was. The district court did both, Your Honor. You are exactly correct. It said, I see you've got some evidence, but you didn't put it on when you were supposed to. And secondly, she said the 8.2 was not sufficient by itself because it was conclusory. That's consistent with Tenth Circuit law, and I think she followed the Tenth Circuit law. What the Tenth Circuit ultimately decided, I have absolutely no idea. They simply denied it. We don't know whether they denied it for constitutional grounds, whether they denied it because their docket was too busy, they denied it because they didn't think this was a clean vehicle to change their Tenth Circuit rule. Roberts. Roberts. Well, one thing we know is that they denied it upon careful consideration of the party's submissions as well as the applicable law. Was there anything in the party's submissions other than the question on which we granted cert? No, I don't think so, Your Honor. I think the issues that were provided to the Court there in the Tenth Circuit were very similar to what you see here in this Court, with the exception of whether this Court has jurisdiction under either 1447d or, as this Court has suggested, maybe under Hohn. And under Hohn, then, that this Court would have some type of review of whether that was an abuse of discretion to simply say denied. But no one has come to this Court and said, we want certiorari granted on it. What should be the factors? What should the Court decide when it says we're not going to take that appeal under 1447d? Ginsburg. Do I remember wrong in thinking that in your briefing you didn't raise this question. You just argued what the notice of removal must contain. And it wasn't until there was one green brief, Public Citizen, that brought up this question. So you were content until a friend of the Court made the suggestion to argue this case on the merits. Your Honor, I'm comfortable and have argued this case on the merits, as you know. But nonetheless, I think it's on duty bound, as all the parties are, to determine whether this Court has jurisdiction and what the extent of that jurisdiction is. You are correct that the amicus first raised the issue of jurisdiction in the reply brief. They had the opportunity to say what they thought was the jurisdictional issue, which they believe was under Nixon. I don't believe Nixon or Hahn, either one of those cases, govern here, because neither of those cases are remand cases. I think 1447d controls on the remand side only because of the limited exception, not because of the ---- Breyer. Briefly, the Court has jurisdiction of cases in the court of appeals. Certainly, Your Honor. Breyer. Now, when, in fact, a party appeals a district court's remand, he files that appeal paper in the court of appeals. The case is there. Before they decide it, we could take it. After they decide it, and if they affirm it, or if they decide to hear it, we could take it. It's there. But suppose they say no. Does that remove it from the court of appeals? If the answer to that question, which is your position that you're arguing, is now this Court can't take it, then it can't take anything. It can't take the same things down in the habeas cases. It can't take the attorneys' fees things. It can't take anything. I would guess because it would say where a court has discretion and says, no, we're not taking it, it's not reviewable in this court because it's no longer in the court of appeals. Now, what's the ---- is that your position? You see, I don't think it's a very good position from my tone of voice, but if there's something else, maybe there's a better one. Well, then I won't take that position, Your Honor. Breyer. Well, no, you ---- I mean, I'm often wrong in these things. Well, the position I would take is that there's a clear distinction in 1447d that addresses remand and has nothing to do with Hahn or Miller, L. or Nixon. And so this Court was not wrong in Hahn or Miller, L. or Nixon because, of course, those cases, as the Court points out, were in fact in. But so was Gravitt and so was Kircher. Those cases were, in fact, in the court of appeals when the Court granted certiorari. And maybe you answered this before, but is it your position that under the Class Action Fairness Act, the court of appeals has absolute discretion, unlimited discretion to decide whether to take an appeal or not? I believe that's correct. Any reason whatsoever is okay? Any reason whatsoever is okay as long as it's ---- I would guess, as I think Justice Scalia pointed out, as long as it's not a constitutional violation. So what if the court of appeals says, we're not taking this because we just don't like the Class Action Fairness Act, think it's bad public policy, we are never going to take one of these? That's okay? I don't know if that would be a constitutional violation, Your Honor. I think if it's not a constitutional violation, I think it probably would be okay. But if it is a constitutional violation, it probably would not. And I think that's a question I'm ill-prepared to answer. But I do think there is that discretion, and that discretion is relatively absolute. It's not completely absolute because the Tenth Circuit is bound to honor the Constitution before it does any of the discretion. Alito, so what if they say, and this is not certainly true of the Tenth Circuit, but, you know, suppose things change and we get to the point where each judge on the Tenth Circuit is sitting on ten cases a year, and so they can have a ten-month vacation, and they say, well, we don't want to take this because, you know, we may not have a ten-month vacation, we'll have a nine-month vacation, would that be all right? Again, I think it's that line of what when the judge is doing his job, when he's not doing his job, and whether there's a constitutional violation. But that's the necessary evil with respect to discretion in an appeal. You have that discretion, and that discretion is fairly absolute. There are no, in 1453, there's no. Alito, all the Class Action Fairness Act says, I believe, is that the Court may take the case. It doesn't specify the scope of discretion. It doesn't say it's absolute. It doesn't. It doesn't, Your Honor. You are absolutely correct. It doesn't provide any parameters whatsoever as to whether that is an absolute discretion or how that discretion is to be exercised. And so, consequently, the circuit courts have no, they have no direction from Congress and, at this point, no direction from this Court as to how much discretion they have under 1453 when they deny that particular appeal, and whether this Court then has anything from which it can say, well, I've seen why you denied it and we'd like to review that. Alito, outside of the Class Action Fairness Act, may a district court – is a court of appeals barred from reviewing a decision of a district court to remand a case based on docket control? Not under ThermTron as it exists at this point, Your Honor. Can we infer anything from that as to whether Congress thought that that would be a proper reason under the Class Action Fairness Act? Your Honor, I see my time's up. You can't escape that easily. Thank you, Your Honor. I think that indicates that it's not absolute. I know that this Court has suggested perhaps ThermTron needs to be revisited, but nonetheless, ThermTron is the law of the land as we stand today, which indicates it's not absolute and that discretion probably is not absolute. But how to review that without something more is not clear. Thank you. Thank you, counsel. Mr. Barrett, you have three minutes remaining. It's simply improper to allow circuit courts of appeals to insulate their decisions from review by not giving reasons for their decisions. If Congress wants to prevent this Court from exercising its power to review decisions, Congress can, and it knows how to do it. It did it in AEDPA, as I mentioned before, and it didn't do it here. Instead, through 1453, Congress enacted a statute that is a grant of jurisdiction to this Court. It's one of the unusual, the rare instances where Congress granted jurisdiction over remand issues. And the Forsyth case answers a lot of questions in this case. It provides that the power of this Court, the certiorari power of this Court, after the Court has jurisdiction of a case, which it does here. The certiorari power of this Court may be exercised before or after any decision by that Court and irrespective of any ruling or determination therein. Irrespective of any determination or ruling therein, this Court's power is comprehensive and it should result in a reversal in this case. If there are not any more questions, thank you. Thank you, counsel. The case is submitted.